UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

ROGER FIELDS )
 )
V. ) NO. 2:07-CV-207
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter has been referred to the United States Magistrate Judge by order [Doc. 22] of the District Judge for a report and recommendation regarding the Motion for Summary Judgment [Doc. 13] of plaintiff and the Motion for Summary Judgment [Doc. 20] of the defendant Commissioner.

This is an action for judicial review of the Commissioner's final decision denying plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act. The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the

Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988).

The plaintiff was 52 years of age at the time of the ALJ's decision. He has a limited education. His past relevant work was as a maintenance helper which was "heavy" and as a clean-up worker which required medium exertion. He claims to be disabled due to a back injury, arthritis, carpal tunnel syndrome, breathing problems, depression and anxiety.

The following is a description of the plaintiff's medical treatment taken from the Commissioner's memorandum [Doc. 21] at pages 2 through 7:

"The record reflects that Plaintiff was treated for a variety of ailments, including chest pain, osteoarthritis, gastroesophageal reflux disease, painful left toe, hyperlipidemia, possible carpal tunnel syndrome, peripheral neuropathy, psoriasis, and neck and back pain (Tr. 145-87).

In March 2004, Plaintiff was examined and diagnosed with psoriatic arthritis and psoriasis (Tr. 192-95).

Dr. [Samuel D.] Breeding [the plaintiff's treating physician] began treating Plaintiff in May 2004, when Plaintiff stopped working after he bent over to pick up trash and suddenly had pain in his low back (see, e.g., Tr. 250, 262). At that time, Plaintiff was working for the housing authority as a cleaner, picking up and disposing of items such as furniture and appliances (Tr. 92-93). Dr. Breeding diagnosed lumbar strain and ordered physical therapy three times per week for two weeks (Tr. 250, 237). One week later, Plaintiff returned to Dr. Breeding and told him he was better than on the last visit, but was not quite ready to do regular work (Tr. 249). Plaintiff was instructed not to lift over fifteen pounds and do no repetitive bending for one week (Tr. 249).

When Plaintiff saw Dr. Breeding in June 2004, he told him that he was making slow

2

progress, but overall was improving (Tr. 247). Plaintiff did not believe he was capable of doing his regular work (Tr. 247). Physical therapy was going well and was helping Plaintiff, as was his medication, but he continued to have mild to moderate pain (Tr. 247). Dr. Breeding wrote a note indicating that Plaintiff should be off work for two weeks due to back strain (Tr. 261).

Later in June 2004, Plaintiff reported that physical therapy was going well and he felt like he had made excellent progress (Tr. 246). He still had some soreness and discomfort but felt ready to try to do his regular work (Tr. 246).

In July 2004, Plaintiff presented to the emergency room after he hurt his back lifting some tables (Tr. 270-75). He was diagnosed with lumbar strain and released to return to work provided he did not lift, push, or pull over ten pounds, did not perform repetitive or prolonged forward bending, twisting, kneeling, squatting, or climbing (Tr. 275). The restrictions were in place until August 1, 2004 (Tr. 275).

In August 2004, Plaintiff returned to Dr. Breeding with a flare-up of his symptoms after lifting some tables (Tr. 245). He reported increased pain and did not feel that he was able to do his regular work (Tr. 245). Later that month, Plaintiff stated that he did not feel much better; he tried to be active at home, but had increased symptoms particularly when he sat and when he slept, but Dr. Breeding noted that Plaintiff was sitting comfortably on the examination table (Tr. 244).

An August 2004 MRI demonstrated minimal stress changes in the lumbar spine vertebral bodies; no remodeling changes of the vertebral body endplates; no fractures or destructive bone lesions; no pathologic adipose marrow replacement change; degenerative disc disease at L4-5 intervertebral disc space level with mild desiccation changes and mild intervertebral disc space narrowing; no neuropathic intervertebral disc protrusions or extrusions were identified; no gross paraspinous abnormalities were seen; slight wavy undulating nerve rootlets in the lumbar canal

3

distal to the conus medullaris; the appearance of nerve rootlets was most often within the range of normal but could be seen with early arachnoiditis as well; no intrathecal masses were identified; paraspinous soft tissues were normal; no acute anatomical abnormalities were evident (Tr. 251-52).

Late in August 2004, after the MRI, Plaintiff returned to Dr. Breeding and stated that he was doing about the same and his medications helped, but when he tried to be very active, he had increased back pain and stiffness (Tr. 243). Dr. Breeding observed that the MRI showed mainly degenerative changes with no nerve root compression (Tr. 243). He noted the mention of some wavy nerve rootlets distal to the conus medullaris that was generally considered within normal limits but could sometimes be early arachnoiditis (Tr. 243). Dr. Breeding did not believe that was significant (Tr. 243).

Around September 2004, Dr. Breeding completed an "Attending Physician's Statement of Disability" and reported Plaintiff's diagnosis as lumbar strain (Tr. 262-63). He indicated that he thought Plaintiff would be able to resume work at an undetermined time (Tr. 262). Dr. Breeding noted that an August 2004 MRI revealed mild degenerative changes, but no nerve root compression (Tr. 263).

Also in September 2004, Dr. Breeding saw Plaintiff and noted Plaintiff's report that physical therapy was helping him and he could use a little more (Tr. 242). Plaintiff hoped he could return to work within a few weeks, but was involved in an automobile accident earlier that week when his car was hit from behind (Tr. 242). Plaintiff had some neck pain associated with the accident and intended to see his regular physician about that (Tr. 242). Dr. Breeding wrote a note indicating Plaintiff should be off work for two weeks due to back pain and a recent auto accident (Tr. 260). He referred Plaintiff to Dr. Marshall for accident follow up (Tr. 260). Dr. Breeding also prescribed continued physical therapy three times a week for two weeks (Tr. 259).

4

Plaintiff also saw Dr. Pastrick in September 2004 in consultation for left carpal tunnel release (Tr. 277-78). Dr. Pastrick diagnosed left carpal tunnel syndrome and right thumb trigger (Tr. 278). He noted that an EMG report was consistent with left carpal tunnel syndrome (Tr. 277). Dr. Pastrick discussed a carpal tunnel release with Plaintiff, but first injected the carpal tunnel, as well as the right thumb flexor tendon sheath, with steroids to see if that would relieve the symptoms (Tr. 277).

In late September 2004, Plaintiff stated that he was doing a little better, but continued to have pain in his low back and tailbone (Tr. 241). Dr. Breeding again reported Plaintiff should be off work for two weeks due to back pain (Tr. 258), and renewed his prescription for continued physical therapy three times a week for two weeks (Tr. 257).

When Plaintiff returned to Dr. Breeding in October 2004, Plaintiff reported that he was doing about the same and his back continued to be stiff and sore (Tr. 240). Physical therapy helped some, but his neck had been sore since the auto accident (Tr. 240). Dr. Breeding gave Plaintiff another note to be off work for two weeks and renewed his physical therapy prescription (Tr. 256).

In late October 2004, Plaintiff reported that his pain was no better but he was moving a little better (Tr. 239). He stated that his symptoms had been worse since the auto accident (Tr. 239). Dr. Breeding discussed that the MRI did not show any ruptured disc and only mild degenerative changes, and it was possible that Plaintiff's slow recovery might be related to arthritis (Tr. 239). He kept Plaintiff off work and instructed continued physical therapy again at the end of October 2004 (Tr. 253-54).

Plaintiff also saw Dr. Pastrick in October 2004 and reported that his thumb was much better and no longer triggered, but he still had problems with his left carpal tunnel syndrome (Tr. 276). Dr. Pastrick recommended left carpal tunnel release and discussed the risks (Tr. 276).

When Plaintiff returned to Dr. Breeding in November 2004, he stated he was worse instead of better, and continued to have moderately severe back pain (Tr. 238). Physical therapy did not help any longer (Tr. 238). Dr. Breeding noted that a repeat MRI done in November 2004 showed no change from the previous MRI and it did not appear that the auto accident changed Plaintiff's lumbar anatomy (Tr. 238). He instructed Plaintiff to follow up in six weeks, at which time he should be at maximum medical improvement (Tr. 238).

In January 2005, Dr. Davis, a state agency physician, reviewed the record evidence and concluded Plaintiff could perform medium exertional work (Tr. 279-86).

Dr. Breeding saw Plaintiff again in January 2005 and Plaintiff stated that he was no better since his last visit, but his medication continued to help him with his back pain (Tr. 288). Plaintiff did not think he was able to return to work and stated that, when he tried to increase his activity, his back worsened (Tr. 288). Dr. Breeding encouraged Plaintiff to be as physically active as he felt comfortable (Tr. 288). He concluded Plaintiff was at maximum medical improvement and had a five percent impairment of the whole person (Tr. 288).

Plaintiff returned to Dr. Breeding in July 2005, reported pain in his leg worse than previously and requested a change in his medications (Tr. 287). Dr. Breeding changed his medications and noted that follow up would be in three months (Tr. 287).

In December 2005, Dr. Breeding completed another "Attending Physician's Statement of Disability" and reported Plaintiff's diagnosis as lumbar strain and back pain as his main disabling condition (Tr. 342-43). He indicated that Plaintiff was disabled from any occupation and did not think he would ever be able to resume work (Tr. 342)."

To elaborate on Dr. Breeding's December, 2005 medical assessment, he found that the plaintiff could occasionally lift and carry up to 10 pounds. He also said the plaintiff could never crawl, squat, twist or climb and occasionally bend, kneel and reach.

6

[Tr. 342].

In his hearing decision, the ALJ found that the plaintiff has the residual functional capacity for simple, unskilled light work that allows frequent postural changes and does not require working around respiratory irritants. Based upon the testimony of vocational expert, the ALJ found that there were a significant number of jobs in the regional and national economies that the plaintiff could perform. Accordingly, he was found to be not disabled. [Tr. 22].

The plaintiff asserts various issues in this judicial review. However, one is dispositive. Plaintiff's second challenge to the ALJ's decision is that he "erred in failing to accord proper weight to the opinion of plaintiff's treating physician." [Doc. 14, pg. 10]. In this record, Dr. Breeding, the treating physician, opined that the plaintiff could not lift over 10 pounds and had other postural limitations. No other examining physician submitted a medical assessment. The assessment from Dr. Davis, the non-examining State Agency doctor, opined after reviewing the record that the plaintiff could perform medium exertion.

The ALJ and the Commissioner both note that Dr. Breeding's treatment notes and objective findings do not, in their opinion, support his assessment of plaintiff's functional capacity. This argument would be somewhat more persuasive if another physician had actually examined the plaintiff and presented a medical assessment which supported the ALJ's finding. This case cried out for a consultative physical examination, yet none was ordered. The opinion of a non-examining State Agency physician, by itself, simply cannot be the basis for rejecting the opinion of a long-standing treating physician in an

7

area of medicine such as the restrictions caused by back pain.

It is certainly not clear from the record that the plaintiff is, in fact, disabled. It is therefore recommended that the case be remanded to the Commissioner for further proceedings, including a consultative physical examination. Plaintiff may submit whatever additional evidence he deems necessary. It is therefore recommended that the plaintiff's Motion [Doc. 13] be GRANTED insofar as it suggests a remand, and that the defendant Commissioner's Motion [Doc. 20] be DENIED.[1]

Respectfully submitted:

 s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 198l); 28 U.S.C. § 636(b)(1)(B) and (C).